| | |
|---|---|
| **MICHAEL DUNN** <br> 600 Eastern Shore Dr. <br> Salisbury, MD 21804 | *    **IN THE CIRCUIT COURT** |
| | *    **FOR WORCESTER COUNTY** |
| *Plaintiff,* | *    **STATE OF MARYLAND** |
| v. | *    **CIVIL CASE NO.** C-23-CV-20-000032 |
| **POCOMOKE CITY** <br> 101 Clarke Avenue <br> Pocomoke City, Maryland 21851 | * |
| **SERVE:**    Mayor Bruce Morrison <br>             101 Clarke Avenue <br>             Pocomoke City, Maryland 21851 | * |
| *Defendant.* | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## COMPLAINT

Plaintiff Michael Dunn ("Mr. Dunn") through counsel brings suit against Pocomoke City (the "City") and states as follows.

### JURISDICTION AND VENUE

1. This Court has jurisdiction pursuant to Md. Code Ann., Cts. & Jud. Proc. § 1-501, conferring jurisdiction over civil cases within county boundaries upon Circuit Courts.

2. This Court has personal jurisdiction over the City pursuant to Md. Code Ann., Cts. & Jud. Proc. § 6-102, authorizing a Court of this State to exercise personal jurisdiction over entities organized under the laws of or maintaining a principal place of business in the State.

3. Venue lies in this Court pursuant to Md. Code Ann., Cts. & Jud. Proc. § 6-201(a), providing a civil action can be brought in the County where the Defendant carries on a regular business.

## PARTIES

4. Mr. Dunn is a resident of Wicomico County, Maryland. Mr. Dunn is the owner of several properties in the City of Pocomoke, including 128 Market Street, Pocomoke City, Maryland ("Subject Property").

5. The City is a Maryland municipal corporation of the State of Maryland, located in Worcester County, with all privileges of a body corporate to sue and be sued and to plead and be impleaded in any court of law.

## FACTS COMMON TO ALL COUNTS

6. The Subject Property consists of a 2040 square foot commercial building, connected on both sides to other commercial structures in a "rowhome" manner.

7. Mr. Dunn purchased the Subject Property in October 2017. Just prior to his purchase, the building was occupied by "the Dance Loft" where the owner gave dance lessons to children. At the time of settlement, the Subject Property was unoccupied and, although it was structurally sound, it required significant repairs in order to make it usable as a modern commercial space.

8. Mr. Dunn purchased the Subject Property with the intention of renovating and improving it, as he has done with several other properties within the City. Currently, Mr. Dunn owns 13 buildings in Pocomoke, all of which required substantial renovations after his purchase.

9. Once renovated, Mr. Dunn intended to lease the Subject Property to a commercial tenant.

10. Over the years, various City officials have told Mr. Dunn the City intends to demolish his entire block and sell the land to an out-of-town developer. The City has made various below-market offers to purchase the Subject Property, all of which were rejected by Mr. Dunn.

11. In early February 2019, Mr. Dunn received correspondence from the City demanding he perform certain repairs to the Subject Property or demolish the building. The correspondence, dated February 7th, directed Mr. Dunn obtain permits to do so within 10 days, as well as appear for a hearing in City Council chambers on February 19, 2019.

12. The repairs which the City ordered Mr. Dunn complete included roof repairs, replacement of windows, removing debris from the property, repairing brickwork and abatement of standing water.

13. When Mr. Dunn received the City's February 7, 2019 correspondence, he had not yet performed the anticipated repairs to the Subject Property. Nonetheless, the Subject Property was structurally sound and did not impose a threat to neighboring buildings or occupants.

14. On February 12, 2019, Mr. Dunn went to the City's building department to apply for permits to complete the requested repairs. Mr. Dunn was turned away and told he would need to talk with the building inspector because his was a "complicated case." Mr. Dunn was assured the building inspector would call him to discuss the permits.

15. Mr. Dunn never received a telephone call from the building inspector and, as a result, he attended the February 19, 2019 meeting of the Mayor and City Council to discuss the anticipated repairs.

16. During the meeting it became readily apparent the City had no intention of letting Mr. Dunn repair the property, despite its request that he do so in the February 7th letter.

17. Rather, over Mr. Dunn's objection, a "motion to demolish" was made and approved by the City's Mayor and Council.

18. The next day (February 20, 2019), the City accepted a bid from Pocomoke Recycling in connection with the demolition, which started just days later on or about February 22nd.

19. Mr. Dunn, who anticipated appealing the City Council's decision to the Circuit Court or instituting other civil action to halt the proposed demolition, was shocked to learn his building was completely demolished by February 26, 2019.

20. Thereafter, Mr. Dunn received an invoice from the City for the demolition in the amount of $23,990.20.

21. Mr. Dunn, who also owns the property next to the Subject Property (132 Market Street, Pocomoke, Maryland), has discovered the City's demolition caused substantial damage to that property as well.

## CAUSES OF ACTION
## COUNT I – INVERSE CONDEMNATION/TAKING
### (Violation of Md. Const. Art. III, § 40)

22. Mr. Dunn incorporates the facts alleged above.

23. Under § 107 et seq. of the City Code, only "unsafe buildings" can be ordered to be demolished. The Subject Property was not an "unsafe building."

24. Even if the Subject Property were an "unsafe building," § 107 et seq. of the City Code requires Mr. Dunn be given an opportunity to abate the problem by repair, as contemplated by the City's February 7, 2019 correspondence.

25. When Mr. Dunn attempted to apply for a permit to complete the requested repairs, he was denied by the City.

26. Ultimately, the City unlawfully demolished the Subject Property without declaring it to be an "unsafe building" and without first giving Mr. Dunn an opportunity to perform any necessary repairs.

27. The actions of the City in unlawfully demolishing Mr. Dunn's property constitute a taking in that they deny Mr. Dunn any economically viable use of his property and were a physical invasion of the subject property.

28. Alternatively, the City's actions constitute a partial taking of Mr. Dunn's property in that the City's actions have subtracted from Mr. Dunn's full enjoyment of the property and limit his exploitation of it.

29. The City failed to pay just compensation for the taking of the Subject Property.

30. Equity and fairness entitle Mr. Dunn to just compensation.

31. The City's actions in unlawfully demolishing the Subject Property deprived Mr. Dunn of his rights, privileges and immunities secured by Md. Const. Art. III, § 40.

32. The City's actions in demolishing Mr. Dunn's property were arbitrary, capricious, malicious and without a rational basis. Such actions constitute a taking of the Subject Property without just compensation in violation of the Maryland Constitution.

## COUNT II – TAKING

**(Violation of Fifth and Fourteen Amendments of the United States Constitution pursuant to 42 U.S.C. § 1983)**

33. Mr. Dunn incorporates the facts alleged above.

34. Under § 107 et seq. of the City Code, only "unsafe buildings" can be ordered to be demolished. The Subject Property was not an "unsafe building."

35. Even if the Subject Property were an "unsafe building," § 107 et seq. of the City Code requires that Mr. Dunn be given an opportunity to abate the problem by repair, as contemplated by the City's February 7, 2019 correspondence.

36. When Mr. Dunn attempted to apply for a permit to complete the requested repairs, he was denied by the City.

37. Ultimately, the City unlawfully demolished the Subject Property without declaring it to be an "unsafe building" and without first giving Mr. Dunn an opportunity to perform any necessary repairs.

38. The actions of the City in unlawfully demolishing Mr. Dunn's property constitute a taking in that they deny Mr. Dunn any economically viable use of his property and were a physical invasion of the subject property.

39. Alternatively, the City's actions constitute a partial taking of Mr. Dunn's property in that the City's actions have subtracted from Mr. Dunn's full enjoyment of the property and limit his exploitation of it.

40. The City failed to pay just compensation for the taking of the Subject Property.

41. The City acted under color of state law to deprive Mr. Dunn of his rights, privileges and immunities secured by the Fifth and Fourteen Amendments of the United States Constitution and under the Civil Rights Act of 1871, 42 U.S.C. § 1983.

42. Specifically, the City's actions in unlawfully demolishing the Subject Property deprived Mr. Dunn of his rights, privileges and immunities secured by the Fifth and Fourteenth Amendments of the United States Constitution.

43. The City's actions in demolishing Mr. Dunn's property were arbitrary, capricious, malicious and without a rational basis.

44. Mr. Dunn has suffered actual damages in an amount in excess of $75,000 as a result of the violations of his civil and constitutional rights as described herein, and therefore Mr. Dunn is entitled to recover those damages under 42 U.S.C. 1983.

45. Under 42 U.S.C. 1983, Mr. Dunn is entitled to receive his actual costs and attorneys' fees expended as a result of the violation of his civil and constitutional rights by the City.

## COUNT III – TRESPASS

46. Mr. Dunn incorporates the facts alleged above.

47. In demolishing the Subject Property on or about February 22, 2019, the City physically entered the property of Mr. Dunn.

48. This intrusion was unlawful, without the consent or Mr. Dunn, and interfered with his possessory interest.

49. As a result of the City's intrusion, the Subject Property was seriously damaged.

## COUNT IV – NEGLIGENCE

50. Mr. Dunn incorporates the facts alleged above.

51. In demolishing the Subject Property, the City had a duty to ensure that its actions did not cause harm to neighboring structures.

52. The City breached its duty in that it substantially harmed Mr. Dunn's property located at 132 Market Street, Pocomoke, Maryland while performing the demolition of the Subject Property.

53.     The harm caused to 132 Market Street by the City's negligence includes holes in the brick walls which will likely lead to water damage throughout the building.

54.     Mr. Dunn has been damaged by the City's negligence because he must now retain contactors and other professionals to correct the physical damage to 132 Market Street.

**WHEREFORE,** Mr. Dunn requests this Honorable Court:

A.  Enter a judgment in favor of Mr. Dunn against the City in the amount of the value of the Subject Property.

B.  Enter a judgment in favor of Mr. Dunn against the City and Order an award to Mr. Dunn for actual, consequential and punitive damages in the amount in excess of $75,000, to be determined at trial, plus interest and costs.

C.  Award Mr. Dunn costs and reasonable attorney's fees incurred in this action; and

D.  Grant Mr. Dunn such other further relief as the nature of his cause may warrant.

ROBIN R. COCKEY, CPF # 8011010072
LAURA E. HAY, CPF #: 0912150098
Cockey, Brennan & Maloney, PC
313 Lemmon Hill Lane
Salisbury, MD 21801
410-546-1750
Fax: 410-546-1811
rrcesq@cbmlawfirm.com
Hay@cbmlawfirm.com